Matthew J. Jasen, J.
This is an application by the defendant-petitioner for an order in the nature of a writ of error coram nobis to set aside and vacate a judgment under which he was convicted of the crime of burglary in the third degree on March 3, 1950, and sentenced to a term of 5 to 10 years at the Attica State Prison by the Honorable George H. Rowe, a Justice of the Supreme Court.
The petitioner states that he is confined in the Federal Penitentiary at Lewisburg, Pennsylvania, where he was sent after conviction of the crime of postal theft which he committed while on parole on his 1950 sentence. A retainer warrant, petitioner alleges, is now on file against him with the Warden of the Lewisburg Penitentiary for his breach of his parole.
The basis of the petitioner’s claim is that it was not proved that he was sane at the time he committed the 1950 crime and that he was not represented by an attorney before and at the time he pleaded guilty. In more detail he alleges that he was arrested by Buffalo police officers on August 23, 1949 for a crime; that he was sent to the E. J. Meyer Memorial Hospital at Buffalo for psychiatric evaluation and study; that thereafter at a hearing held before the Plonorable Leo J. Hagerty, Supreme Court Justice, he was declared and adjudicated as being mentally incompetent and unable to recognize right from wrong; that sometime in September, 1949, he was committed to the Buffalo State Hospital from which hospital he escaped in the month of *9 October of the same year and thereafter on January 22, 1950, committed the crime of burglary in the third degree for which crime, upon his plea of guilty, he was sentenced as above noted; that at the time he committed the 1950 crime and when he pleaded guilty he had not been judicially declared to have regained his mental competency and that he was denied due process of law in that no hearing was held at which he was present to determine his mental competency at the time he committed the 1950 crime. The petitioner also maintains that he was not represented by counsel as above stated and if he was represented the representation was wholly inadequate.
The foregoing contentions of the petitioner were presented to this court and decided adversely to him by the Honorable Philip Halpebh, Justice of the Supreme Court, who wrote a memorandum dated August 1, 1951, in which petitioner’s claims were discussed at length. (See copy of memorandum annexed to the answering affidavit.) Judge Halpekn found: “As to the first ground of attack, it appears from the record that the defendant was represented by counsel of his own choosing at the time he pleaded guilty. The defendant admits in his papers that he was represented by counsel who also represented a co-defendant but the defendant contends that he accepted the services of such counsel only because of the refusal of his prior request for the assignment of counsel. There is nothing in the record to sustain the defendant’s claim that there had been such refusal. On the contrary, it appears that when he was arraigned, counsel was assigned to him by the Court but that later the defendant retained private counsel. The undisputed fact is that the defendant was represented by such counsel at the time he pleaded guilty. The first ground of attack must therefore be rejected as being wholly without merit.”
The claim of the petitioner on this application that he was not represented by counsel before and at .the time he pleaded guilty has, as shown above, no basis in fact. Furthermore, if as petitioner claims in the alternative that the representation by his counsel was inadequate, he fails to show any grounds for relief here for the procedures that he maintains should have been required before he was permitted to plead guilty could have been demanded by the counsel employed by him who was present when he pleaded guilty. This is clearly shown by the decision in People v. Hernandez (8 N Y 2d 345) in which the defendant applied for a writ of error coram nobis. The court said at page 347: “ Although cases may arise where we may find that the constitutional rights of a defendant are violated because the representation of retained counsel is inadequate (see Powell *10 v. Alabama, 287 U. S. 45), this is not such a case. The alleged misconduct of counsel chosen by defendant cannot be attributed to ‘ action on the part of the State ’ (see People v. Tomaselli, 7 N Y 2d 350, 354; People v. Brown, 7 N Y 2d 359) and even if proven would not constitute a denial of due process.”
Judge Halpebn reviewed the facts relative to the adjudication of the petitioner as mentally incompetent after he committed the 1949 crime and stated: “ The defendant was accordingly committed, by order of Justice Hagebty on September 27, 1949, to the Buffalo State Hospital. The defendant was examined and observed at the Buffalo State Hospital and at first claimed to be suffering from amnesia but, according to the hospital record, on November 4, 1949, he stated that his previous claims of amnesia were made for the purpose of evading punishment and that he had ‘ put it over on the doctors at the E. J. Meyer Memorial Hospital ’. Upon examination on that date, the staff of the Buffalo State Hospital came to the conclusion that the proper diagnosis was that the defendant was ‘ without psychosis ’ but that he had a ‘ psychopathic personality with asocial and amoral trends \ Upon the basis of this finding, the Hospital was giving consideration to the return of the defendant to the court for prosecution on the then pending criminal charge when, on November 13,1949, the defendant escaped from the Hospital.
* *
“No claim was made by the defendant or by his attorney at any stage of the prosecution on the burglary charge that the defendant was mentally incompetent or that he was unable to understand the nature of the charge or of the proceedings or that he was unable to assist in his defense. No plea of insanity was entered but, on the contrary, as has been stated, the defendant pleaded guilty after receiving the advice of counsel of his own choosing.
“ In this situation, there was no reason for the Justice before whom the burglary charge came, to initiate an investigation as to the defendant’s mental condition under § 658 of the Code of Criminal Procedure. The State Hospital had had the defendant under observation for a period of over six weeks and had come to the conclusion that he was not suffering from a psychosis and that he was mentally competent. This examination had been completed only three months before the date upon which the defendant pleaded guilty to the burglary charge. It is true that the examination was conducted in connection with the forgery charge, which, so far as appears, was never disposed of, but the results of the examination were relevant in the disposition of the subsequent burglary charge.
*11 “ The initiating of an investigation under § 658 of the Code as to the mental condition of the defendant rests wholly or in the discretion of the court and the failure of the court to initiate such an investigation under the circumstances here presented cannot be made the basis of a motion to vacate the conviction and sentence.”
A decision after a hearing on an application for a writ of error coram nobis is in effect res judicata on the matters presented to the court and precludes the petitioner from presenting the same matters on a subsequent application for the same relief (People v. Sullivan, 4 N Y 2d 472; People v. Martine, 303 N. Y. 789, affg. 278 App. Div. 966; People v. Zurak, 1 A D 2d 832). In People v. Sullivan (supra) the court in referring to a writ of error coram nobis said at page 474: “Where a second or later application is made, which alleges no new or additional evidence and is in all material respects substantially the same as dealt with in the prior application, there is no reason why a hearing must be conducted on the renewed application.” The foregoing rule of law is clearly applicable to the petitioner’s present application. The petitioner’s application for a writ of error coram nobis is denied without a hearing and the petition dismissed.